ADAM J SCHWARTZ, BAR NO. 251831
5670 WILSHIRE BLVD., SUITE 1800
LOS ANGELES, CA 90036
TEL: (323) 455-4016
E-MAIL: ADAM@AJSCHWARTZLAW.COM

*Local Counsel for Plaintiff, Remaining Counsel for Plaintiff Below*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRY FABRICANT, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> INDEPENDENT ORDER OF FORESTERS and MARK BLOCK <br><br> Defendants. | Case No. <br><br> COMPLAINT FOR: <br> 1. VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b) <br><br> Class Action <br><br> DEMAND FOR JURY TRIAL |

Plaintiff TERRY FABRICANT ("Plaintiff"), by his undersigned counsel, for this class action complaint against Defendants INDEPENDENT ORDER OF FORESTERS ("Foresters") and Mark Block ("Block") and their present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities ("Defendants"), alleges as follows:

### I.     INTRODUCTION

1. <u>Nature of Action</u>.  Plaintiff, individually and as class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), a federal statute enacted in response to widespread public outrage about the proliferation of

- 1 -
COMPL.
*Fabricant v. Independent Order of Foresters, et. al.*

intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

## II.   PARTIES

2.   Plaintiff Terry Fabricant is an individual residing in California, in this District.

3.   Defendant Independent Order of Foresters is a fraternal organization based in Toronto, Ontario, Canada. Foresters offers insurance service products in this District.

4.   Defendant Block is a California resident with an address of 12756 Venice Blvd., No. 109 in Los Angeles, CA 90066.

## III.   JURISDICTION AND VENUE

5.   <u>Jurisdiction</u>.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 because they arise under a law of the United States: 47 U.S.C. § 227.

6.   <u>Personal Jurisdiction</u>.  This Court has personal jurisdiction over Defendants because the challenged calls at the heart of this case were directed from and into California. Furthermore, all Defendants reside in California as Foresters offers insurance services here and

7.   <u>Venue</u>.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Plaintiff resides in this District and the challenged calls at the heart of this case were directed by Defendants from and into this District.

## IV.   THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8.   The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

9. Relevantly, the TCPA provides private rights of action for two types of telemarketing-related conduct.

10. First, Section 227(b) of the TCPA prohibits initiating a telemarketing call using an automatic telephone dialing system or pre-recorded message without the prior express written consent of the called party.

11. "Prior express written consent" requires a signed writing that clearly authorizes the seller to deliver to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice. 47 C.F.R. § 64.1200(f)(8).

12. This written agreement must clearly and conspicuously disclose that the calls would be made using an automatic telephone dialing system or an artificial or prerecorded voice, and that the person is not required to sign the agreement as a condition of purchasing any property, goods, or services. *Id.* at (f)(i)(A-B).

13. A violation of § 227(b) carries statutory damages of $500 to $1,500 per call.

14. According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited April 20, 2020). YouMail estimates that 2019 robocall totals exceeded 60 billion. *See id.*

## V. FACTUAL ALLEGATIONS

15. Foresters is an insurance company that provides, among other things, life insurance.

16. However, Foresters contact with potential new customers is limited, as they engage third parties, such as Mr. Block, to telemarket on their behalf to consumers.

17. Defendants' strategy for generating new customers involves the use of an automatic telephone dialing system ("ATDS") to solicit business.

18. Recipients of these calls, including Plaintiff, did not consent to receive them.

19. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

The Automated Telemarketing Call From Mr. Block for Foresters

20. Plaintiff's telephone number, (818)-266-XXXX, is registered to a cellular telephone service, which is the number he received the calls on.

21. That telephone number has been on the National Do Not Call Registry since June of 2008.

22. The Plaintiff received a telemarketing call from Mr. Block on March 5, 2020.

23. When Plaintiff answered he heard a clicking sound and there was a pause until an agent joined the call.

24. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

25. The dialing system used by Mr. Block also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

26. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

27. As a predictive dialer, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

28. The dialing system can do this by inputting a straightforward computer command.

29. Following that command, the dialing system will sequentially dial numbers.

30. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

31. This would be done without any human intervention or further effort.

32. As a result, the system that sent automated calls to Plaintiff qualifies as an ATDS pursuant to 47 U.S.C. 227(a)(1)(A).

33. Mr. Block mentioned on the call with Plaintiff that he offered Foresters services.

34. Mr. Block sent the Plaintiff a life insurance quote and confirmed that he was licensed to offer Foresters insurance services.

35. The call was not necessitated by an emergency.

36. The Plaintiff received a similar telemarketing call from Mr. Block on March 10, 2020 from the same Caller ID.

37. Plaintiff's privacy has been violated by the above-described telemarketing robocalls from, or on behalf of, Defendants. The calls were an annoying, harassing nuisance.

38. Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants because their privacy has been violated, they were annoyed and harassed, and, in some instances, they were charged for incoming calls.  The calls occupied their cellular telephone lines, rendering them unavailable for legitimate communication.

## VI. FORESTERS'S LIABILITY AND THEIR ARRANGEMENT WITH BLOCK

39. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing*

*the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

40. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

41. In that ruling, the FCC instructed that sellers such as Foresters may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

42. By hiring a company to make calls on their behalf, Foresters "manifest[ed] assent to another person . . . that the agent shall act on the principal's

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

43. Similarly, by accepting these leads, Mr. Block "manifest[ed] assent or otherwise consent[ed] . . . to act" on behalf of Foresters as described in the Restatement (Third) of Agency. As such, Mr. Block is an agent for Foresters.

44. Moreover, Foresters maintained interim control over Mr. Block's actions.

45. For example, Foresters had absolute control over whether, and under what circumstances, they could issue an insurance quote and/or policy to a prospective customer.

46. Foresters also gave interim instructions to Mr. Block by providing (1) geographic parameters for potential customers that Mr. Block could telemarket to and (2) the volume of calling and leads they would purchase.

47. Mr. Block also could bind Foresters in contract, a hallmark of an agency relationship.

48. All of Mr. Block's telemarketing conduct was for Foresters benefit.

49. In fact, Mr. Block is only licensed in California to offer Foresters insurance policies.

50. Foresters has also previously been sued for the telemarketing conduct of its agents, including in *Cunningham v. Foresters Fin. Servs.,* 300 F. Supp. 3d 1004 (N.D. Ind. 2018).

51. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable

consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### VII. CLASS ACTION ALLEGATIONS

52. <u>Class Definition</u>. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of the following class:

> All persons to whom: (a) Mr. Block or a third party acting on his behalf made one or more non-emergency telephone calls; (b) promoting Foresters insurance services; (c) to a cellular telephone number; (d) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; (e) at any time in the period that begins four years before the date of filing the original complaint in this case and ends at the date of trial.

("Dialer Class")

53. <u>Exclusions</u>. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, the judges to whom this case is assigned and the legal representatives, assignees, and successors and immediate family members of all of the foregoing.

54. <u>Numerosity</u>. The Class is so numerous that joinder of all its members is impracticable. On information and belief, the Class has more than 100 members. Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

55. <u>Commonality</u>. The key questions driving the outcome of this dispute have the same answers for all Class members. Those questions include, but are not limited to, the following:

  a. Whether Defendants used an ATDS, as defined by *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1043 (9th Cir. 2018);

  b. Whether Defendants purchased batches of leads of prospects who had not consented to be called by them;

        c.    Whether Foresters is vicariously liable for the conduct of Block;

        d.    Whether Defendants' violations of the TCPA were knowing and willful; and

        e.    Whether Defendants should be enjoined from engaging in similar telemarketing in the future.

56.    <u>Typicality</u>. Plaintiff's claims are typical of the claims of the Class. Plaintiff's claims and those of the Class arise out of the same course of conduct by Defendants and are based on the same legal and remedial theories.

57.    <u>Adequacy</u>. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable counsel with experience in TCPA class litigation. Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel has interests contrary to or conflicting with those of the proposed Class.

58.    <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiff and members of the Class. The common issues arising from this conduct that affect Plaintiff and members of the Class predominate over any individual issues. For example, the TCPA's statutory damages obviate the need for mini-trials on actual damages. Adjudication of these common issues in a single action has important advantages, including judicial economy.

59.    <u>Superiority</u>. A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual members of the Class in individually controlling the prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are dwarfed by the cost of prosecution. Management of these claims is likely to present significantly fewer difficulties than are presented in many class

actions because the calls at issue are automated and because the TCPA lays down bright-line standards for liability and damages. Class treatment is superior to thousands of individual suits because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

60. Only 1 in 7 million robocalls results in the filing of a federal TCPA suit. *Compare* Herb Weisbaum, *It's Not Just You—Americans Received 30 Billion Robocalls Last Year*, NBC News (Jan. 17, 2018), https://www.nbcnews.com/business/consumer/it-s-not-just-you-americans-received-30-billion-robocalls-n838406 (30.5 billion robocalls); *with* WebRecon, *WebRecon Stats for Dec 2017 & Year in Review* (last visited April 20, 2020), https://webrecon.com/webrecon-stats-fordec-2017-year-in-review/ (4,392 TCPA complaints). Except to the extent that they are remedied by class actions, the other 6,999,999 are made with impunity.

61. <u>Injunctive and Declaratory Relief is Appropriate</u>. Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.

62. <u>Notice</u>. Plaintiff anticipates that the mailing address and/or electronic mailing address of Class members will be obtained during discovery from Defendants' calling records (potentially in conjunction with third-party databases that map phone numbers to such addresses). Plaintiff anticipates that Class counsel will notify Class members in writing at such addresses.

## VIII. FIRST CLAIM FOR RELIEF

**Violations of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Dialer Class)**

63. Plaintiff and the proposed Dialer Class incorporate the foregoing allegations as if fully set forth herein.

64. Block placed numerous calls for telemarketing purposes for Foresters to Plaintiff's and Dialer Class Members' cellular telephone numbers.

65. Block did so using an automatic telephone dialing system.

66. Block did so without the prior express written consent of Plaintiff and Dialer Class Members.

67. Plaintiff and Dialer Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(b)(3).

68. Plaintiff and Dialer Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call because Defendant's violations were knowing and/or willful.

69. Plaintiff and Dialer Class Members are entitled to an injunction and seek one preventing Foresters agents from using an ATDS absent emergency circumstances.

## IX.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of all members of the Class, prays for judgment against Defendants as follows:

A. Certification of the proposed Class;

B. Appointment of Plaintiff as representative of the Class;

C. Appointment of the undersigned counsel as counsel for the Class;

D. A declaration that actions complained of herein by Defendants and/or their affiliates, agents, or related entities violate the TCPA;

E. An injunction preventing Foresters agents from using an ATDS absent emergency circumstances.

F.      An order enjoining Defendants and their affiliates, agents and related entities from engaging in the unlawful conduct set forth herein;

G.      An award to Plaintiff and the Class of damages, as allowed by law;

H.      An award to Plaintiff and the Class of attorney's fees and costs, as allowed by law and/or equity;

I.      Leave to amend this Complaint to conform to the evidence presented at trial; and

J.      Orders granting such other and further relief as the Court deems necessary, just and proper.

## X.     DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 14th day of May, 2020.

By:

/S/ ADAM J SCHWARTZ
ADAM J SCHWARTZ

Anthony I. Paronich (subject to *pro hac vice*)
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

Brian K. Murphy (subject to *pro hac vice*)
Jonathan P. Misny (subject to *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400

- 12 -
COMPL.
*Fabricant v. Independent Order of Foresters, et. al.*

(614) 488-0401 facsimile
murphy@mmmb.com
misny@mmmb.com

*Attorney for Plaintiff Terry Fabricant and the Proposed Class*